UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES                                    CRIMINAL DOCKET

VERSUS                                           NO: 09-212

KENTRELL WASHINGINGTON                           SECTION "R"


**ORDER AND REASONS**

Before the Court is defendant Kentrell Washington's Motion to Withdraw Guilty Plea.  Because the Court finds that the defendant has failed to provide a fair and just reason for permitting withdrawal of his guilty plea, the Court DENIES the motion.


**I.  Background**

On June 16, 2009, Kentrell Washington was arrested after marijuana and a firearm were found in the automobile in which he was a passenger.[1]  On July 31, 2009, a grand jury indicted Washington on Count One of the Superseding Indictment, charging that Washington possessed a firearm after having been convicted of a felony, in violation of Title 18, United States Code, Section 922(g)(1).[2]

---

[1]  R. Doc. 28.

[2]  R. Doc. 11.

On February 24, 2010, Washington pleaded guilty to Count
One of the Superseding Indictment.  A signed Factual Basis was
submitted to the Court at Washington's rearraignment.[3]  The
Factual Basis provides that the truck in which Washington was a
passenger was pulled over for a traffic violation.  An individual
later identified as Christopher Dorsey was in the driver's seat.
The officers noticed that once the truck pulled over, the
occupants were moving erratically inside.  Based on the erratic
movements, the officers instructed the occupants to step out of
the vehicle for officer safety.  When Washington, the backseat
passenger, stepped out of the truck, Detective Gaudet observed in
plain view a plastic bag containing marijuana on the back
passenger seat.  Detective Gaudet detained Washington and
recovered the marijuana.  Sergeant Lubrana then retrieved a 9mm
Beretta semi-automatic pistol from underneath the driver's seat.
When Washington saw Sergeant Lubrana step away from the truck
with the firearm, he stated "[t]hat gun and weed is mine."
Washington was then placed under arrest.  At the police station,
Washington again stated that the gun was his and informed S/A
Doreck that he obtained it from his girlfriend in Houston.

Washington's sentencing was scheduled for June 16, 2010.  On
June 14, 2010, Washington's attorney, Frank DeSalvo, filed a
motion to withdraw as counsel.  On the same day, Washington filed

---

[3]  R. Doc. 28.

a motion to withdraw his guilty plea.  On June 16, 2010, the
Federal Public Defender was appointed to represent Washington.
After numerous deficient filings, Washington's motion to withdraw
his guilty plea was successfully filed on September 28, 2010.
Washington asserts that he was manipulated to plead guilty and
that his counsel had a conflict of interest.  On October 19,
2010, the Court held an evidentiary hearing on defendant's motion
to withdraw his guilty plea.

## II. Legal Standard

"It is well settled that there is no absolute right to
withdraw a guilty plea before the imposition of sentence."
*United States v. Rasmussen*, 642 F.2d 165, 167 (5th Cir. 1981)
"Instead, the right to do so is within the sound discretion of
the trial court."  *Id.*  The Court may permit withdrawal before
sentencing if the defendant can establish a "fair and just
reason" for doing so.  Fed. R. Crim. P. 11(d)(2).

When considering whether to grant a motion to withdraw a
guilty plea, the Court considers the factors set forth in *United
States v. Carr*: whether (1) defendant has asserted his innocence;
(2) the government would suffer prejudice if the withdrawal
motion were granted; (3) the defendant delayed in filing his
withdrawal motion; (4) the withdrawal would substantially
inconvenience the court; (5) close assistance of counsel was

available; (6) the original plea was knowing and voluntary; and (7) the withdrawal would waste judicial resources.  740 F.2d 339, 343-44 (5th Cir. 1984).  The Court also considers "the reason why defenses advanced later were not proffered at the time of the original pleading, or the reasons why a defendant delayed in making his withdrawal motion."  *Id.* at 344.

"No single factor or combination of factors mandates a particular result."  *United States v. Badger*, 925 F.2d 101, 104 (5th Cir. 1991).  Instead, the Court makes its determination based on the totality of the circumstances.  *Carr*, 740 F.2d at 344 (citing *United States v. Morrow*, 537 F.2d 120, 146 (5th Cir. 1976)).  "For example, the longer a defendant delays in filing a withdrawal motion, the more substantial reasons he must proffer in support of his motion."  *Id.* (citing *United States v. Barker*, 514 F.2d 208, 222 (D.C. Cir. 1975)).  "The burden of establishing a fair and just reason for withdrawing a guilty plea remains at all times on the defendant."  *Badger*, 925 F.2d at 104 (citing *United States v. Hurtado*, 846 F.2d 995, 997 (5th Cir. 1988)).

## III. Discussion

Upon consideration of the *Carr* factors and the totality of the circumstances, the Court finds that defendant has failed to establish a "fair and just reason" for the Court to allow withdrawal of his guilty plea.

In examining the first and third *Carr* factors, the Court notes that the defendant did not assert actual innocence until almost four months after his guilty plea, and after he received the Pre-Sentence Investigation Report and faced imminent sentencing.  The Fifth Circuit has stated that the purpose of allowing a defendant to withdraw his guilty plea is:

> To permit him to undo a plea that was unknowingly made at the time it was entered. The purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.

*United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984) (citation omitted).  In *Carr*, the Fifth Circuit held that a district court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea when the defendant waited 22 days to request withdrawal of his guilty plea, and only did so three days before his sentencing. *Id.*  Washington waited substantially longer, almost four months, before asserting his innocence in his first failed attempt to file a motion to withdraw his guilty plea.  Further, the first motion was filed only two days before the sentencing date of June 16, 2010. Defendant's present motion to withdraw his guilty plea was not filed until September 28, 2010, more than seven months after his rearraignment.

The Court finds that the second *Carr* factor, whether a withdrawal of the guilty plea would result in prejudice to the government, does not alter its judgment.  In its opposition, the government does not contend that it would suffer prejudice if the withdrawal motion were granted.  The Fifth Circuit, however, has held that "the absence of a showing of prejudice to the government, by itself, [is not] sufficient to mandate permission to withdraw a plea."  *Id.* (quoting *United States v. Rasmussen*, 642 F.2d 165, 168 n.6 (5th Cir. 1981)).

In considering the fourth and seventh *Carr* factors, vacating Washington's guilty plea would not result in significant inconvenience to the Court.

Under the fifth *Carr* factor, the Court finds that the defendant has failed to establish that he was denied the close assistance of counsel.  "Determining whether a defendant received close assistance of counsel requires a fact-intensive inquiry." *United States v. McKnight*, 570 F.3d 641, 646 (5th Cir. 2009). Defendant alleges that he did not receive close assistance of counsel because: (1) Mr. DeSalvo represented Mr. Christopher Dorsey in state criminal proceedings arising out of a separate incident creating an undisclosed actual conflict of interest, and represented Dorsey in an unrelated civil case; (2) Mr. DeSalvo only reviewed the factual basis for the guilty plea with Washington a few minutes before his rearraignment began; and (3)

Mr. DeSalvo failed to inform Washington of his sentencing exposure under the Sentencing Guidelines.

"Courts analyzing allegations of conflicted counsel typically ask two questions: (1) whether there was an *actual* conflict of interest, as opposed to a merely potential or hypothetical one, and (2) whether the actual conflict adversely affected counsel's representation." *United States v. Levine*, 138 F. App'x 681, 683-84 (5th Cir. 2005) (quoting *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005)).  In determining whether a conflict of interest exists, "relevant factors may include (1) whether the attorney has confidential information that is helpful to one client but harmful to the other client; (2) whether and how closely related is the subject matter; (3) how close are the multiple representations in time; and (4) whether the prior representation has terminated." *Morin v. Thaler*, 374 F. App'x 545, 552 (5th Cir 2010).  However, "if a conflict does not adversely affect counsel's performance, no 'actual conflict' exists." *Levine*, 138 F. App'x at 683-84.  "An 'actual conflict' exists when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000).

Washington has not shown an actual conflict of interest
denying him close assistance of counsel.  First, it is not clear
from the record that Mr. DeSalvo represented Dorsey in his state
criminal case at the time of Washington's rearraignment on
February 24, 2010.  The record from Dorsey's state court
proceedings on the separate and unrelated gun charge show that
Mr. DeSalvo first appeared with Dorsey on March 12, 2010.[4]  Before
March 12, 2010, Nicole Bowen made all appearances at Dorsey's
hearings.  Further, there is no evidence in the record of a
professional relationship between Mr. DeSalvo and Ms. Bowen at
the time of Washington's rearraignment, except that Mr. DeSalvo
and Ms. Bowen have offices at the same address.[5]  That Mr. DeSalvo
and Ms. Bowen share the same office address does not establish
that Mr. DeSalvo was representing Dorsey at the time of
Washington's rearraignment or that he had confidential
information from Dorsey that could be harmful to Dorsey but
helpful to Washington.  Further, the defendant did not subpoena
Mr. DeSalvo for the evidentiary hearing.  On the other hand,
given that Mr. DeSalvo appeared for Dorsey in the state court
proceedings just one month after Washington's rearraignment and
that Ms. Bowen's representation of Dorsey had not terminated, the
record suggests that Mr. DeSalvo could have been involved in

---

[4]  R. Doc. 53-1 at 4.

[5]  *Id.* at 6.

representing Dorsey at the time of Washington's rearraignment.
Even if the Court finds that Mr. DeSalvo simultaneously
represented Washington and Dorsey, the defendant has nevertheless
made no showing that the two matters were in any way related.
Nor has he showed that Mr. DeSalvo received any confidential
information from Dorsey that was harmful to Dorsey, but helpful
to Washington or that Mr. DeSalvo had to compromise his advocacy
on behalf of Washington because of his representation of Dorsey.

The Court also finds that Mr. DeSalvo's later representation
of Dorsey in *Bagneris v. Dorsey*, an unrelated civil action, did
not give rise to a conflict of interest.  This case was filed on
October 5, 2010, more than seven months after Washington's
rearraignment.  In *Bagneris*, plaintiffs bring claims for Lanham
Act violations, misappropriation, unjust enrichment, trespass to
land and intrusion on seclusion, arising from Dorsey's alleged
use of plaintiffs' real property in making a music video.[6]  The
subject matter of the civil action is completely unrelated to the
charges against Washington.  Further, there is no evidence that
through this representation, Mr. DeSalvo received confidential
information from Dorsey that was helpful to Washington, but
harmful to Dorsey or that this representation compromised Mr.
DeSalvo's advocacy on Washington's behalf.

---

[6]  R. Doc. 53-1 at 10-14.

Second, even if Mr. DeSalvo represented Dorsey at the time of defendant's rearraignment, Washington has not established that a conflict of interest adversely affected Mr. DeSalvo's representation for the reasons he suggests.  Washington claims that "it appears that Mr. DeSalvo's conflict of interest negatively affected his performance as Mr. Washington's attorney" because Mr. DeSalvo did not review with Washington the Factual Basis for his guilty plea until a few minutes before his rearraignment began and did not explain his sentencing exposure under the Sentencing Guidelines.[7]  Washington does not explain how Mr. DeSalvo's alleged failure to review the Factual Basis with him until right before his rearraignment affected his guilty plea.  Washington provided no evidence that more time reviewing the Factual Basis would have prevented him from pleading guilty. Washington has thus provided this Court with no explanation as to how the amount of time he spent reviewing the 2.5 page Factual Basis with Mr. DeSalvo affected his decision to plead guilty. The Factual Basis is a short statement of uncomplicated facts that would not require a lengthy explanation or analysis.

Further, Washington's complaint about the timing of his review of the Factual Basis and his allegation that Mr. DeSalvo failed to discuss the Sentencing Guidelines with him contradict his rearraignment testimony.  The Fifth Circuit has emphasized

---

[7]   R. Doc. 48-1 at 7.

that "a defendant ordinarily will not be heard to refute [his]
testimony given at a plea hearing while under oath.  *United
States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)
(citation omitted).  At his rearraignment, Washington testified
that he had sufficient time to discuss his case with Mr. DeSalvo
and was satisfied with the advice and services Mr. DeSalvo had
provided him.[8]  Washington confirmed that he had read the 2.5 page
Factual Basis, reviewed it with his attorney and that the facts
stated in it were true.[9]  Further, Mr. DeSalvo stated that he had
a full opportunity to investigate the facts and the law that
applied to Washington's case as well as any defenses he might
have.[10]  In addition, Washington testified that Mr. DeSalvo had
discussed the Sentencing Guidelines with him.[11]  Because "solemn
declarations in open court carry a strong presumption of verity,"
the Court rejects Washington's unsworn assertion that review of
the Factual Basis immediately before the plea hearing adversely
affected him and rejects his unsworn contention that Mr. DeSalvo
failed to discuss his sentencing exposure under the Sentencing
Guidelines.  Washington "has not identified any 'plausible
alternative defense strategy that could have been pursued, but

---

[8]   Rearr. Tr. 8: 11-16.

[9]   *Id.* at 10: 1-11.

[10]   *Id.* at 8: 23-25; 9: 1.

[11]   *Id.* at 4: 24-25; 5: 1.

was not, because of [an] actual conflict.'"  *Levine*, 138 F. App'x

at 684.   Further, he has failed to prove the two adverse effects

he asserts.   "Without a specific showing of an adverse effect, no

actual conflict exists."  *Id.*


The Assistant U.S. Attorney further undermined Washington's

contentions that he did not receive close assistance when the

attorney informed the Court that Mr. DeSalvo had "numerous and

lengthy discussions" with him concerning the evidence the

government had against Washington, discovery issues and

Sentencing Guidelines.   Further, Mr. DeSalvo actively sought and

received the government's assurance of a three-point guideline

reduction for Washington's acceptance of responsibility.[12]   After

examining the actions taken by Mr. DeSalvo on behalf of

Washington, the Court finds that Mr. DeSalvo closely assisted the

defendant.   *Cf. McKnight*, 570 F.3d at 647 (finding that an

attorney who advised his client that cooperating with the

government would make him eligible for a three point Sentencing

Guidelines reduction, despite the attorney's failure to inform

his client that he would be subject to a career offender

enhancement, received close assistance of counsel).

The sixth factor is whether defendant's guilty plea was

knowing and voluntary.   For a plea to be knowing and voluntary,

---

[12]   R. Doc. 52 at 4-5.

"the defendant must be advised of and understand the consequences of the guilty plea." *United States v. Gaitan*, 954 F.2d 1005, 1011 (5th Cir. 1992) (citing *United States v. Pearson*, 910 F.2d 221, 223 (5th Cir. 1990)). Washington contends in his unsworn pleading that his plea was not knowing and voluntary because he was manipulated into pleading guilty and Mr. DeSalvo did not explain his sentencing exposure under the Sentencing Guidelines. Washington did not testify at the evidentiary hearing.

At his rearraignment, Washington testified under oath that he understood the charges against him and the consequences of pleading guilty. Washington also testified that he understood the elements of the offense he was charged with.[13] Defendant stated that he understood that by pleading guilty he was waiving his right to a speedy and public trial, his right against self-incrimination, his right to confrontation, his right to a unanimous jury verdict and to the presumption of innocence.[14] Washington testified that he was pleading guilty because he was in fact guilty and that he was pleading guilty voluntarily and of his own free will.[15] He further testified that he had not been influenced, induced, or persuaded in any manner to plead guilty

---

[13]    Rearr. Tr. 6: 18-25; 7: 1-6.

[14]    *Id.* at 6: 11-17; 7: 7-25.

[15]    *Id.* at 10: 20-25.

because of any promises or threats made by anyone.[16]

Additionally, defendant stated that he had read the Factual

Basis, reviewed it with his attorney and that the facts contained

within it were true.[17]  The Court informed the defendant of the

maximum possible sentence under the charge in the indictment.[18]

Washington also confirmed that Mr. DeSalvo had discussed the

Sentencing Guidelines with him.[19]  While the defendant initially

said that he did not understand that the sentence the Court

imposes may be different from any estimate Mr. DeSalvo gave him,

after conferring with his attorney, the defendant stated that he

understood:

> THE COURT: In sentencing you, the Court will also consult
> the Sentencing Guidelines.  Has Mr. DeSalvo discussed the
> Sentencing Guidelines with you?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Do you understand that the sentence I impose may
> be different from any estimate your lawyer gave you that the
> sentence I impose on you may be different from any estimate
> of the sentence that your lawyer talked to you about?
> THE DEFENDANT: No, ma'am.
> THE COURT: Do you understand that?
> THE DEFENDANT: No.
>     (Whereupon there was a brief conference off the record
>     between the defendant and his counsel.)
> THE DEFENDANT: Yes, ma'am.[20]

---

[16]   *Id.* at 8: 4-7.

[17]   *Id.* at 10: 1-11.

[18]   *Id.* at 4: 8-14.

[19]   *Id.* at 4: 23-25; 5: 1.

[20]   *Id* at 4: 24-25; 5: 1-11 .

Further, upon receiving defendant's affirmative response, the

Court confirmed that the defendant in fact understood:

> THE COURT: Do you understand? Do you understand the Court is
> going to determine your sentence not what your lawyer tells
> you?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Do you understand that after I determine what
> guideline range is recommended for you, I may impose a
> sentence that's longer or shorter if I find that the
> guidelines don't take into account all of the relevant
> facts?
> THE DEFENDANT: Yes, ma'am.
> ...
> THE COURT: Do you understand that I can impose the maximum
> sentence I just described to you?
> THE DEFENDANT: Yes, ma'am.[21]

The defendant was aware of the maximum sentence he might receive,

and that the sentence imposed by the Court could be different

from the estimated sentence Mr. DeSalvo had discussed with him

under the Sentencing Guidelines.  Because, a "defendant

ordinarily will not be heard to refute [his] testimony at a plea

hearing while under oath," *Cervantes*, 132 F.3d at 1110, the Court

finds that Washington's plea was knowing and voluntary.

Accordingly, after considering the totality of the

circumstances, the Court finds that defendant has failed to show

a fair and just reason for withdrawing his guilty plea.


**IV.   CONCLUSIONS**

---

[21]   *Id.* at 5: 12-20; 6: 2-4.

For the foregoing reasons, the Court DENIES defendant's Motion to Withdraw his Guilty Plea.


New Orleans, Louisiana, this 21st day of October, 2010.


_____
               SARAH S. VANCE
        UNITED STATES DISTRICT JUDGE